**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No.** 17-MC-00062

**Rifle Remedies, LLC, a Colorado limited Liability Company,**

**Petitioner,**

**v.**

**UNITED STATES OF AMERICA, through its agency the INTERNAL REVENUE SERVICE,**

**Respondent.**

---

**PETITION TO QUASH SUMMONSES**

---

PETITIONER, Rifle Remedies, LLC, a Colorado limited liability company, Daniel Meskin, and Mike Miller, by and through their undersigned counsel, submit the following Petition to Quash Summons:

**CERTIFICATION REGARDING DUTY TO CONFER**

Pursuant to Local Rule 7.1, below signed counsel hereby certifies that on May 1, 2017 prior to filing this Petition to Quash, he conferred with counsel for the Respondent, who stated that the Respondent does not consent to the relief sought by Petitioners.

**NATURE OF THE ACTION**

1. This is not a matter of a tax protestor seeking the aid of the Court. Rather, this is a situation where the Internal Revenue Service ("IRS") is abusing its authority under its civil audit power to conduct essentially a criminal investigation of purported violations of the Controlled

Substances Act, 21 U.S.C. 801, *et seq.* ("CSA"). The CSA is outside the Tax Code. What the IRS seeks to do is outside of its civil and even criminal enforcement authority. In addition, the purported violations of the CSA which the IRS is attempting to use are a "dead letter", i.e., sales of marijuana in compliance with state law. Such use of civil audit power is conducted for an improper purpose and not in good faith.

## PARTIES

2. Petitioner Rifle Remedies, LLC ("Rifle Remedies"), is a Colorado Limited Liability Company in good standing.

3. Petitioner Daniel Meskin is a Colorado resident.

4. Petitioner Mike Miller is a Colorado resident.

5. Respondent United States of America ("IRS" or "Respondent") is the proper respondent in an action regarding summonses by the IRS. The IRS is an agency of the United States government and, for the purpose of this Petition, is subject to the law applicable to federal law enforcement agencies concerning the issuance and enforcement of a summons for document.

6. The Colorado Department of Revenue, Marijuana Enforcement Division ("MED"), is a governmental agency of the State of Colorado, located at 1707 Cole Blvd., Suite 300, Lakewood, CO 80401. The MED may be found in the District of Colorado. The MED is the entity to which the IRS summons is directed. This summons is attached hereto as Exhibit 1.

## JURISDICTION

7. This Court has jurisdiction over the claims outlined herein under 28 U.S.C. § 1331, based on the existence of a federal question, and 26 U.S.C. § 7609(h), providing jurisdiction over a Petition to Quash a Summons issued by the IRS.

## THE SUMMONSES

8. On April 11, 2017, the IRS issued a summons and served it upon third party MED. The summons, attached hereto as Exhibit 1, seeks:

1) Copy of METRIC Annual Gross Sales Reports for Rifle Remedies, LLC 27-1058405 for the taxable year ended December 31, 2014 and December 31, 2015.
2) Complete listing of marijuana licenses held by Rifle Remedies, LLC, Daniel Meskin and Mike Miller during the period of 01/01/2014 through 12/31/2016 by license type whether grow, marijuana infused product manufacturing or retail.
3) Transfer report for Rifle Remedies 27-1058405 for the period 01/01/2014-12/31/2014 and 01/01/2015-12/31/2015.
4) Annual Harvest Reports for Rifle Remedies 27-1058405 for the period 01/01/2014-12/31/2014 and 01/01/2015-12/31/2015.
5) Monthly Plant Inventory Reports for Rifle Remedies 27-1058405 for the period 01/01/2014-12/31/2014 and 01/01/2015-12/31/2015.

## BACKGROUND INFORMATION

9. In January 2017, the IRS sent a notice of audit for Rifle Remedies, LLC for the fiscal years ending in 2014 and 2015. Typically, a civil audit is conducted for the purpose of 1) the IRS to confirm income; and 2) the taxpayer to support deductions. However, what became clear early on was that what was being conducted was not any form of recognizable civil audit. This policy of the IRS continues, as it has very recently stepped up its investigative efforts by issuing this summons to the MED.

10. The auditor, Jean Walker, has made clear that the purpose of this audit is to determine

whether Rifle Remedies is trafficking in a controlled substance – a violation of the Controlled Substances Act. 21 USC 801, *et seq*. ("CSA"). Ms. Walker is seeking this information in an attempt to take away all of Rifle Remedies otherwise lawful tax deductions. The normal concern of income and expenses is minimal or non-existent. The issuance of this summons to MED is evidence of Ms. Walker's mission.

11. To this end, Ms. Walker initially demanded that Rifle Remedies turn over State of Colorado METRC records so she could establish the extent of the purported trafficking of controlled substances. Rifle Remedies declined to provide any METRC records to Ms. Walker, as they are not related to any income or tax preparation needs. Thereafter, on or about April 11, 2017, Ms. Walker issued a summons to the State of Colorado Department of Revenue, Marijuana Enforcement Division ("MED"), requesting such information.

12. The request for this MED information is beyond the scope of a civil examination because it is clearly directed to establishing the facts of the purported criminal activity and has nothing to do with the income and expenses of Rifle Remedies. The initial request directed to Rifle Remedies, along with this MED summons, establishes a pattern of efforts to build a criminal case against Rifle Remedies.

## STANDARD OF REVIEW

It is well settled that, to be enforceable, a summons issued by the IRS must satisfy the standard set forth in *United States v. Powell*, 379 U.S. 48 (1964). See, e.g., *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1444 (10th Cir. 1985). Under this mandatory standard, prior to enforcement of a summons, the Commissioner of the IRS must show that:

1) The investigation will be conducted pursuant to a legitimate purpose;
2) The inquiry may be relevant to the purpose;

3) The information sought is not already within the Commissioner's possession; and,

4) The administrative steps required by the Code have been followed – in particular, that the IRS, after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect.

See *Id.* (quoting *Powell*, 379 U.S. at 57-58).

Additionally, the IRS should not be allowed to use its summons power to conduct a "fishing expedition" on the records of third parties only tangentially related to the finding of taxpayer's income and expenses. *United States v. Coopers & Lybrand,* 550 F.2d 615, 619-20 (10th Cir. 1977). A summons should only be issued when: (1) the information required is vital to the investigation; (2) the taxpayer or third-party summonee is unreasonably refusing to cooperate; and (3) the information cannot be easily obtained from other sources. See, G. SUMMONS AND ENFORCEMENT by George Johnson and Marvin Friedlander. https://www.irs.gov/pub/irs-tege/eotopicg93.pdf. Defendants fail to meet these elements and the elements set forth in *Powell.*

## ARGUMENT

### A. This Summons Should Be Quashed Because the IRS Has Not Satisfied the *Powell* Standard.

#### 1. *This Audit is Being Conducted for an Improper Purpose – IRS Investigation into Whether the Taxpayer Violated Federal Drug Laws is Beyond the IRS Authority.*

As the *Powell* Court stated, the IRS summons must be for a legitimate purpose. If the summons is not for a legitimate purpose, e.g., if the subject of the investigation is beyond the agency's authority, the summons is not for a legitimate purpose and it must be quashed. *Burlington Northern Ry. Co. v. Office of Inspector General,* 983 F.2d 631, 641 (5th Cir. 1993).

As explained above, the purpose of this summons is not to determine income or expenses, but to determine whether the Taxpayer has violated the CSA. The requested records have questionable legitimacy in a tax audit, proving the purposes of obtaining the records are clearly illegitimate.

Given the limitations of authority of the IRS to investigate illegal acts outside of the Tax Code and the "dead letter" rule (see below), there is no legitimate purpose for the Government through the IRS to investigate whether the taxpayer sold marijuana in compliance with state law. There is no legitimate purpose for obtaining third-party enforcement division records to determine income and expenses. Because the IRS is attempting to obtain the information for an improper purpose, the summons should be quashed.

**a. Political Background**

The issues raised by the Petition arise against the backdrop of an evolving legal landscape concerning the distribution and consumption of marijuana, a decision pushed to the forefront by Colorado's recent legalization of the possession and sale of medical and recreational marijuana. As the Court is well aware, Colorado has legalized marijuana sales by licensed dispensaries for medical and recreational purposes. The CSA arguably prohibits such sale and distribution. However, the Department of Justice and Congress have made a clear public policy against enforcement of state legal marijuana sales. As will be discussed below, the legal landscape of "unlawful trafficking" of marijuana has changed and the IRS cannot use a technical violation of the CSA to deny deductions.

The IRS has relied upon *Caregiving Californians Helping to Alleviate Med. Problems, Inc. v. C.I.R.*, 128 T.C. 173 (2007)("CHAMP") and *Olive v. C.I.R.*, 139 T.C. 2, (2012), *aff'd.*, 792 F.3d 1146, 1150 (9th Cir. 2015)("Olive") to state that all state legal marijuana dispensaries

"traffic" in a controlled substance "prohibited" by federal law. However, the reliance is misplaced. In both cases, it was stipulated that the taxpayer had engaged in unlawful trafficking.

The Court did not have to make the determination that unlawful trafficking had occurred. Also, both cases deal with tax years that are pre-2009. See CHAMP – tax year 2002, and *Olive* – tax years 2004-2006. Since that time, the law has changed.

The following memos from the Department of Justice – David W. Ogden, Deputy Att'y Gen., U.S. Dep't of Justice to Selected U.S. Att'ys (Oct. 19, 2009), revised by Memorandum from James M. Cole, Deputy Att'y Gen., U.S. Dep't of Justice (Aug. 29, 2013) – make clear that persons who buy and sell marijuana pursuant to state law will not be prosecuted.

This determination by the Justice Department was approved by Congress in 2014 when it defunded the Department of Justice from prosecuting any marijuana dispensaries that are operating in accordance with state law. See Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, § 538, 128 Stat. 2130, 2217(2014); and Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 542, 129 Stat. 2242, 2332–33 (2015); see also, *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. Cal. 2016).

> "None of the funds made available in this Act to the Department of Justice may be used, with respect to [Medical Marijuana States] to prevent any of them from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana."

Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, §542, 129 Stat. 2242, 2332-33.

As a result, prosecutions of state legal medical marijuana dispensaries, complying with state law, may not proceed. *McIntosh, supra.*

In December 2015, the Tenth Circuit observed "the mixed messages the federal government is sending these days about the distribution of marijuana." *Feinberg v. Commissioner*, 808 F.3d 813, 814 (10th Cir. 2015). The Court further noted that the Department

of Justice had made a policy of non-prosecution of state-legal marijuana sales, but that the IRS had taken contrary approach, investigating and finding that taxpayers were violating federal drug laws by the same actions. *Id.* Judge Gorsuch stated: "you might be forgiven for wondering whether … any admission by the petitioners about their involvement in the marijuana trade still involves an 'authentic danger of self-incrimination.'" *Id.* at 816. The clear import of the Court's message was a doubt that the state-legal marijuana sales could now be considered illegal on the federal level. Certainly, the *Feinberg* court made clear that the official policy of the government was that of non-enforcement with respect to complying state legal sales.

In the last year, and in the Tenth Circuit, these policies have been noted several times:

- In an order granting dismissal in *Safe Streets Alliance v. Hickenlooper,* 1:15-cv-00349-REB-CB (Jan 19, 2016), Judge Blackburn stated: "The Department of Justice has made a conscious, reasoned decision to allow the states which have enacted laws permitting the cultivation and sale of medical and recreational marijuana to develop strong and effective regulatory and enforcement schemes." He also noted, "Allowing private litigants to interfere with that discretionary decision would create precisely the type of 'risk of inconsistent interpretations and misincentives which strongly counsel against recognizing an implicit right to a judicially created equitable remedy.'"
- In her order denying summary judgment of *Green Earth Wellness v. Attain Specialty Ins. Co.*, 13-cv-03452-MK-NYW (Feb. 17, 2016), Judge Krieger noted that the federal government appeared to have different "*de jure* and *de facto* public policies regarding state-regulated medical marijuana." Given the unclear public policy, Judge Kreiger refused to conclude that state-regulated marijuana could be considered "contraband" under a policy of insurance.

- The intersection of the CSA and Colorado's marijuana laws were again recently addressed in *Smith v. Hickenlooper*, 15-cv-00462-WYD-NYW (Feb. 26, 2016). In this case, the Plaintiffs' claims of civil RICO violations against the State of Colorado were rejected by the court. In his order dismissing that case, Judge Daniel noted that enforcement of the CSA is "expressly delegated to the Attorney General of the United States, with criminal liability being the principal enforcement mechanism." *Smith v. Hickenlooper*, 15-cv-00462-WYD-NYW (Feb. 26, 2016). While there was no explicit ruling regarding IRS jurisdiction, the decision implies that there is no delegation of authority outside of the Attorney General. Thus, neither the CSA nor the Tax Code gives the IRS authority to determine whether a taxpayer has violated federal drug laws.

The unclear, vague, and contradictory messages that the federal government is sending about enforcement of marijuana laws raises constitutional concerns. See *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939) *quoting Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.").

Against this backdrop, the IRS is continuing to conduct its pseudo-criminal investigations into the source of taxpayer income to, for all intents and purposes, convict taxpayers of violating federal criminal drug laws and strangle an entire industry that has recently been legalized, regulated, and taxed both federally and by the Colorado state legislature. *Feinberg, supra*. The IRS, however, has no authority to run criminal investigations or render criminal verdicts of

illegal acts outside of the Tax Code. In addition, the IRS has no authority to deny deductions for violations of laws which are a "dead letter".

### b. The IRS Does Not Have Authority To Investigate Or Rule Upon Whether Activity Violates A Criminal Statute Outside Of The Tax Code.

Respondent takes the position that, in disallowing Petitioners' deductions, it is simply enforcing a civil provision of the Internal Revenue Code (the "Tax Code"), and not conducting a criminal investigation into Petitioners' business activities (a tacit acknowledgement that conducting such an investigation would exceed its authority). Despite Respondent's protestations, Section 280E requires there to be a finding of illegality under federal drug laws before it can be applied. No finding of illegal behavior by Petitioners has ever occurred outside of the IRS's summary determination.

Section 26 U.S.C. 280E reads as follows:

> "No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) **which is prohibited by Federal law or the law of any State in which such trade or business is conducted**."[1]

26 U.S.C. § 280E ("Section 280E") (emphasis added).

The plain language of Section 280E makes it clear that the "trafficking" of controlled substances must be illegal for Section 280E to apply. The 1982 Senate Report on the Tax Equity and Fiscal Responsibility Act, in which the reason for the enactment of Section 280E was discussed, leads to the same conclusion: "All deductions and credits for amount paid or incurred in the ***illegal*** trafficking in drugs listed in the Controlled Substances Act are disallowed." *Report of the Committee on Finance United States Senate on H.R. 4961*, p. 309 (emphasis added). The

[1] Colorado legalized the sale and distribution of marijuana by state-licensed dispensaries. Thus, the question of whether Colorado prohibits the transactions is not relevant to Section 280E inquiry as such sales are now lawful.

IRS even conceded this point in the *Feinberg v. Commissioner* matter. Respondent is not denying that a finding of illegality needs to occur before Section 280E can be applied to disallow deductions, but is taking the incorrect, and deeply concerning, position that the IRS can unilaterally make that determination without court involvement or oversight.[2]

Additionally, the CSA defines a "drug trafficker" as one who has been convicted of the distribution of a controlled substance. See 21 U.S.C. 862(a); *see also United States v. Williams*, 541 F.3d 1087 (8th Cir. 2008) (21 U.S.C.S. § 862 defines trafficking offenses as consisting of the distribution of controlled substances). Thus, the CSA itself does not lend to the IRS's position of illegality.[3]

The IRS has been long aware that it does not have the power to make determinations of illegality outside of the Tax Code. General Counsel for the IRS has stated:

> "The Internal Revenue Service is not in a position to make determinations as to the illegality of an act under a provision of law other than the Internal Revenue Code. The Constitution of the United States provides for separation of powers, and a determination of illegality in such cases is within the province of the judiciary. From an administrative standpoint alone, such a task would be impossible for the Internal Revenue Service to undertake. From a legal standpoint, moreover, the onus which attaches to a determination of illegality is such that it would be improper to delegate such a determination to an administrative body without the procedural and substantive due process protection provided through the judicial process."

GCM 37111 at 11.

---

[2] Summary actions by auditors making findings of criminality would probably not comport with the due process clause. *Lipke v. Lederer*, 259 U.S. 557, 562 (1922) ("And certainly we cannot conclude, in the absence of language admitting of no other construction, that Congress intended that penalties for crime should be enforced through the secret findings and summary action of executive officers. The guarantees of due process of law and trial by jury are not to be forgotten or disregarded.")

[3] The court should not give the Defendant deference to its interpretation of Section 280E. The IRS has issued no regulations or any other interpretative documents which would allow the court to give deference to its interpretation. The positions by the IRS as simply litigating positions which provide no deference at all. *JT USA v. IRS*, 771 F.3d 654, 660 (9th Cir. 2014)(Litigating position by IRS is not entitled to *Chevron* deference).

Given the above, the IRS does not have the authority to determine whether taxpayers have violated federal drug laws.

### c. **<u>The IRS Cannot Deny Deductions for Violating a Law Which Is A "Dead Letter".</u>**

As shown by their actions to date, the IRS acknowledges that Section 280E is part of public policy in denying deductions for unlawful acts. Thus, according to the IRS, even the most highly technical violation of federal drug laws allows the IRS to deny deductions under Section 280E. *Id.* However, contrary to the Government's assertions, a naked, technical violation of federal law coupled with an explicit policy of non-enforcement precludes the denial of deductions for otherwise ordinary and necessary business expenses.

> It is clear that the Congress intended the income tax laws "to tax earnings and profits less expenses and losses," *Higgins v. Smith,* 308 U.S. 473, 477 (1940), carrying out a broad basic policy of taxing "net, not . . . gross, income . . . ." *McDonald v. Commissioner*, 323 U.S. 57, 66-67 (1944).

*Tank Truck Rentals v. Comm'r,* 356 U.S. 30, 33 (1958).

To this end, the question of non-deductibility based upon public policy is whether the deduction would violate "sharply defined national or state policies". *Id.* at 35. In addition, the test for non-deductibility of expenses which violate public policy:

> "always is the severity and immediacy of the frustration resulting from allowance of the deduction. The flexibility of such a standard is necessary if we are to accommodate both the congressional intent to tax only net income, and the presumption against congressional intent to encourage violation of declared public policy."

*Tank Truck Rentals*, at 35.

Thus, the Court must interpret the public policy of Section 280E against the above standard. Furthermore,

> "It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory

> scheme.' (citation omitted). A court must therefore interpret the statute 'as a symmetrical and coherent regulatory scheme,' (citation omitted), and 'fit, if possible, all parts into an harmonious whole,' (citation omitted). Similarly, the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand."

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).

Petitioners discussed the *Cole* and *Ogden* memos, as well as the Congressional defunding of prosecutions against state legal commercial marijuana sales, above. It is clear that the public policy is to "generally decline to enforce Congress's statutory command when states like Colorado license [medical marijuana] operations . . ." *Feinberg,* 808 F.3d 813, 814. Subsequently, Congress specifically defunded Department of Justice from prosecuting state legal marijuana sales in its 2015 and 2016 appropriations acts. See *United States v. McIntosh,* 833 F.3d 1163 (9th Cir. 2016). Thus, both the Attorney General, who has sole jurisdiction to enforce the CSA, and Congress have spoken regarding the public policy of state legal marijuana. Both have stated public policy contrary to the public policy asserted by the IRS. Thus, given the public policy declared by the Department of Justice and Congress, all the IRS has left to deny the Petitioners' deductions is a naked, technical violation of the Controlled Substances Act.

However, a technical violation of law is insufficient to disallow deductions based upon public policy. *Sterling Distributors v. Patterson,* 236 F.Supp. 479, 483-484 (N.D. AL 1964). When there is a public policy of non-enforcement of the law, the IRS cannot use the law to deny deductions. *Id.* The law has become a "dead letter" in that respect, and cannot be used by the IRS as a basis to deny deductions. *Id.*

> If [the violation of state law] were all, the court would encounter little difficulty in concluding that such deductions were properly disallowed and would be content to rely upon *Dixie Machine Welding & Metal Works, Inc. v. United States*, 315 F.2d 439 (5th Cir. 1963) and *United States v. Winters,* 261 F.2d 675 (10th Cir.1958) together with the cases cited and discussed therein. But the tale is not yet told. For the undisputed testimony of qualified and credible witnesses makes

> it abundantly clear that the Alabama Beverages Control Board, vested by the provisions of title 29, section 5 of the Code of Alabama with plenary authority to enforce such statutes and regulations has determined not to do so and to ignore them and has so directed its administrator and investigators. Thus the law upon which the Internal Revenue Service relies has become a dead letter, not expressive of current community sentiment at all.
>
> It would be an apparent anachronism for this court now to hold that the expenses actually incurred by plaintiff in carrying on the trade or business violate or frustrate the public policy of the State of Alabama expressed in legislation and regulations which the State, through its authorized officers, long ago determined should not be enforced.

*Sterling Distribs., Inc. v. Patterson*, 236 F. Supp. 479, 482-84 (N.D. Ala. 1964).

The "dead letter" rule announced by the *Sterling Distributors* court has been generally accepted as part of the doctrine underlying the public policy exception. See, e.g., *Brown v. Commissioner*, T.C. Memo 1992-40 (Applying dead letter rule overturning IRS denial of deductions for illegal bribes and kickbacks); *Boucher v. Commissioner*, 77 T.C. 214 (1981) (Declining to invoke dead letter rule under a "close question" of facts where official policy of non-enforcement was not shown).

The IRS has acknowledged that federal criminal drug laws are "dead letter" with respect to state-legal marijuana sales:

> We live in interesting times. In 2009, the Department of Justice de-prioritized the prosecution of marijuana related crimes, stating as a general policy that resources will not be expended prosecuting those whose actions show "clear and unambiguous compliance with state laws providing for the medical use of marijuana." In 2013, the Department of Justice updated this guidance, and it clarified the federal prosecution priorities. . .
>
> * * *
>
> [T]he burgeoning marijuana sales industries in Colorado and elsewhere throughout the United States are due in large part to the Department of Justice's public declaration that such businesses will not be prosecuted absent certain exceptional circumstances.

*Feinberg v. Commissioner,* 10083-13 (U.S. Tax Court) (IRS Response to Petitioner's Motion for Protective Order Pursuant to Rule 103).[4]

Accordingly, the federal drug laws which the IRS seeks to enforce through Section 280E are a "dead letter."

The dead letter rule also promotes the balancing of the conflicting public policies discussed in *Tank Truck Rentals, supra.,* to assure that business is taxed on "net income" while assuring that sharply defined public policies are enforced. To interpret Section 280E as to allow the denial of deductions based upon the public policy advocated by the IRS (and rejected by DOJ and Congress) is creating "mixed messages". *Feinberg,* at 814. To allow the IRS to proceed with a policy that creates mixed messages produces constitutionally suspect vague laws. Vague laws violate the basic principles of due process. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294 (1972).

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned,* 408 U.S. at 108.

The IRS wants a situation where on the one hand, a person will not be prosecuted for violating the CSA when selling state-legal marijuana, but, on the other hand, will have their business deductions denied, based upon public policy, for violating the same law for which the

---

[4] This is part of the briefing which led to the filing of the Petition for Writ of Mandamus in *Feinberg v. C.I.R.,* 808 F.3d 813 (10th Cir. 2015)

taxpayer will not be prosecuted. This is an *Alice in Wonderland* approach that should not be approved by this Court.

The Government has made no showing that the actions of the Petitioner is outside of the public policy made by the Department of Justice and Congress. The IRS should not be allowed to create a public policy for federal drug laws outside of what the Department of Justice and Congress have declared.

The IRS apparently does not like that the Justice Department and Congress has instituted a policy of non-enforcement against state-legal marijuana, and has instituted its own contrary public policy. See *Feinberg, supra* (mixed messages). Now, the IRS asks this Court to enforce these "dead letter" laws. If the IRS does not like the public policy which has been announced by the *Ogden* and *Cole* memos and the Congressional appropriations acts, then it is the IRS which needs to go to Congress and have the public policy changed. The IRS should not be allowed to enforce a dead-letter public policy which has been rejected by both Congress and the Department of Justice.

It is not up to the IRS to create public policy regarding federal criminal drug laws. The Court should not adopt the IRS's policy which is clearly contrary to what has been expounded by the Department of Justice and Congress.

**2. *The Documents Requested in the Summons Are Not Relevant to a Legitimate Purpose.***

A summons should only be issued when: (1) the information required is vital to the investigation; (2) the taxpayer or third-party summonee is unreasonably refusing to cooperate; and (3) the information cannot be easily obtained from other sources. See, G. SUMMONS AND ENFORCEMENT by George Johnson and Marvin Friedlander, **https://www.irs.gov/pub/irs-**

**tege/eotopicg93.pdf**.

In *United States* v. *Coopers & Lybrand*, 550 F. 2d 615 (1976), the IRS sought the enforcement of a summons pursuant to 26 U.S.C. § 7602 from a third-party relating to the IRS' examination and audit of Johns-Manville, Inc. for its corporate tax returns. *Coopers Lybrand* holds that Respondent's power to enforce summonses is not unlimited.

The third party, Coopers & Lybrand received the IRS summons and responded by producing voluminous work papers and documents, but declined to disclose its audit program or the "tax pool analysis file." The IRS filed its petition for judicial enforcement and summons pursuant to 26 U.S.C. § § 7402(b) and 7604(a). In declining enforcement of the summons, the Court found that Johns-Manville's cooperation with the IRS in relation to the investigation was extensive and that "tax fraud had not been charged" and concluded that the IRS failed to make the requisite showing that the Audit Program documents were relevant to the tax investigation.

Recognizing § 7602, and citing *Powell*, the Tenth Circuit found that "investigative powers of § 7602 *are not without limitation*." and that a taxpayer "may challenge the summons on any appropriate grounds." *Coopers & Lybrand, supra.*, citing with approval *Reisman* v. *Caplin*, 375 U.S. 440 at 449, 1964, 84 S. Ct. 508 at 513, 11 L. Ed. 2d 459. Under *Powell*, once a summons is challenged, the court must determine whether the summons seeks information relevant to legitimate purpose and is not meant to "harass" the taxpayers, or for any other purpose reflecting on the good faith of the particular investigation. *Powell* at 58. The Court also cited with approval *United States* v. *Matras* 487 F. 2d 1271 (8th Cir.) stating:

> "Certainly a taxpayer should not erect roadblocks for the purpose of frustrating or preventing the IRS from a full-scale inquiry of the liability of the taxpayer. By the same token, the government should not, for the mere sake of its convenience, impose unnecessary burdens on a taxpayer in conducting an audit or investigation for tax liability, particularly where, as here, there is no indication of a purpose to escape any tax liability. The term "relevant" denotes and encompasses more than

> "convenience." Consequently, we are not persuaded to fault the district judge for concluding that the government failed to sustain its burden of proof by alleging general need for a "roadmap." If we were to accede to the government's view, it is difficult to imagine corporate materials that might *no*t contribute to a more comprehensive understanding of the workings of the corporation, and thus according to the government, be deemed relevant to the tax investigation."

*United States* v. *Coopers & Lybrand*, 550 F. 2d at 620-21, citing *Matras,* 487 F. 2d at 1274-75, also citing *U.S.* v. *Theodore,* 479 F. 2d 749 (4th Cir. 1973).

The *Coopers* Court concluded that a summons *will* be deemed unreasonable an unenforceable if it is overbroad and disproportionate to the end sought, and endorsed the idea protections are "particularly appropriate where the demand for records is not directed to the taxpayer but to a third party who may have had some dealing with the person under investigation. *Id.*

The documents requested in the instant summons to the MED are not relevant to a legitimate purpose. The records relevant to the audit have already been tendered. The Marijuana Enforcement Division records have no relevance to an income and expense audit. This is simply a "fishing expedition" and should not be allowed.

**3. *The IRS has not Completed the Administrative Steps Necessary for Issuance of the Summons.***

To comply with the administrative requirements for the issuance of the summons, the Tax Code requires that the IRS, after investigation, determine that further examination is necessary and notify the taxpayer in writing to that effect. *Powell, supra.* In this case, there is nothing in the record to show that the IRS determined that further examination was necessary and that notified the Petitioners in writing to that effect. I.R.C § 7609.Thus, the IRS has failed to complete all the administrative steps necessary for the issuance of the summons.

**B. Lack of Standards Precludes the IRS from Investigating and Finding a Taxpayer Violated Federal Drug Laws.**

Neither Section 280E, Treasury Regulations, nor Internal Revenue Manual reveal any standards by which the IRS is to use in determining whether a taxpayer has violated federal criminal drug laws in order for the IRs to apply 280E.

While Congress may delegate authority to an agency, such delegation is constitutionally permissible only if Congress provides "standards to guide the authorized action such that one reviewing the action could recognize whether the will of Congress has been obeyed." *Yarkus v. United States*, 321 U.S. 414, 425-26 (1944) (Non-Delegation Doctrine). Since there are no standards either by statute or regulation in which the IRS is to make this determination, the Court should conclude that Congress has not delegated its authority to the IRS to investigate violations of federal criminal drug laws. Since there are no standards, and no delegation by Congress, the IRS should not be given standard less authority by this Court to conduct general investigations of whether taxpayers have violated federal criminal drug laws.

**C. When the IRS Stopped Relying Upon Convictions to Invoke Section 280E and Began Its Own Investigations, the IRS Needed to Engage in Rulemaking Before Doing So.**

Before the codification of the public policy exception into Section 280E and for about twenty-five years thereafter, the IRS relied upon convictions of drug dealers in order to invoke Section 280E. In fact, the IRS had taken an official position that it could not make determinations of illegal conduct outside the Tax Code. See, e.g., GCM 37111. However, once the *Ogden Memo* was issued, the IRS changed course and started administratively determining whether a taxpayer had unlawfully trafficked. Even if the reliance of convictions was considered informal policy, this change of course required the IRS to go through the formal rulemaking

process. *Alaska Professional Hunters Ass'n v. Federal Aviation Administration,* 177 F.3d 1030 (D.C. Cir. 1999). Thus, assuming Congress delegated authority to the IRS to conduct such federal drug law investigations, Treasury Regulations had to be established to make standards of what unlawful trafficking means under Section 280E. Certainly, the question of what "unlawful trafficking" means would be legislative in character, thus requiring rulemaking for such determinations to be enforceable. *Id.*

Since there were no Treasury Regulations in place to determine what unlawful trafficking means, the Auditor's determination of whether Rifle Remedies is trafficking in a controlled substance is arbitrary and should not be approved by this Court.

**D. An Evidentiary Hearing Is Necessary to Confirm The IRS' Good Faith Or, More Likely, Lack of It.**

The Tenth Circuit has recognized that, upon a showing of a lack of good faith by the party challenging a summons issued by the IRS, an evidentiary hearing is necessary to determine whether the IRS had the good faith necessary to enforce its summons. *See Balanced Fin. Mgmt., Inc.,*769 F.2d at 1445 & n.2; see also *United States v. Samuels, Kramer & Co.,* 712 F.2d 1342, 1347-48 (9th Cir. 1983) (citing *United States v. Church of Scientology of Cal*., 520 F.2d 818 (9th Cir. 1975)) (affirming order requiring an evidentiary hearing where petitioner clearly alleged facts from which it could be inferred that the IRS was not acting in good faith); *United States v. McCarthy*, 514 F.2d 368, 375 (3rd Cir. 1975) (holding that though petitioner's allegations of harassment were "indeed thin," they were sufficient to require an evidentiary hearing).

In *U.S. v. Clarke,* 134 S.Ct. 2361, 189 L. Ed.2d 330 (2014), the Court recognized what is obvious in this case: that Petitioners have not had the opportunity to conduct any discovery or examination of any IRS representatives, including Ms. Walker. *Clarke* holds that "the taxpayer is entitled to examine IRS agent when he can point to specific facts or circumstances "plausibly

raising an inference of bad faith". Targeting of entities allegedly in the lawful business of dispensing marijuana, conducting unlawful criminal investigations, and otherwise harassing taxpayers constitutes prima facie showing of bad faith, which would entitle Petitioner to a hearing under *Clarke*.

Under Fed.R.Civ.P. 45(d), and *Coopers & Lybrand*, at 620 and the Petitioners may also request the summonses be modified when an undue burden is present. *United States* v *La Salle Nat'l Bank, 437 U.S. 298(1978).* In *La Salle National Bank*, supra., the United States Supreme Court recognized "that examination of agent motive may be necessary to evaluate the good faith factors of Powell, for example, to consider whether a summons was issued to harass a taxpayer." The IRS cannot simply go on a fishing expedition through a taxpayers records. *United States v Harrington*, 388 F.2d 520, 523(2nd Cir. 1968).

## RELIEF REQUESTED

**WHEREFORE,** Petitioners requests the following relief in their favor:

a) An order quashing the Summons, attached as Exhibit 1; or,

b) An order scheduling an evidentiary hearing to determine if the IRS has satisfied the Powell standard for enforcement of the Summons and, in particular, (i) whether a legitimate purpose supports enforcement of the Summons and (ii) whether the Summons is relevant to any legitimate purpose; and

c) For such other relief as the Court deems just and proper.

DATED: May 1, 2017

Respectfully submitted,

THORBURN WALKER, LLC

*/s/ James D. Thorburn*
James D. Thorburn
Attorney for the Petitioners
5460 South Quebec Street, Suite 310
Greenwood Village, CO 80111
(303) 646-3482
jthorburn@thorburnwalker.com

*/s/ Richard Walker*
Richard Walker
Attorney for the Petitioners
5460 South Quebec Street, Suite 310
Greenwood Village, CO 80111
(303) 646-3482
rwalker@thorburnwalker.com

## CERTIFICATE OF SERVICE PURSUANT TO F.R.C.P. 5

I hereby certify that on this 1st day of May, 2017 a true and correct copy of the attached Petition to Quash was deposited into the U.S. Mail Certified Mail Return Receipt Requested to the following:

Attorney General Jeff Sessions
U.S. Department of Justice
Attn: Civil Process Clerk
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001
Article #

Attorney General Bob Troyer
U.S. Attorney General
Attn: Civil Process Clerk
1801 California Street, Suite 1600
Denver, Colorado 80202
Article#

Also, pursuant to 26 U.S.C. §7609, I served the following persons via certified mail, return receipt requested on May 1, 2017.

Colorado Department of Revenue
Marijuana Enforcement Division
1697 Cole Blvd., Suite 200
Lakewood, Colorado 80401
Article#

Jean Walker
IRS
12600 West Colfax Ave #C300
MS 4436/RM
Lakewood, Colorado 80215 – also by hand delivery
Article#

*s/ James D. Thorburn*